# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **CRYSTAL MEAUX** | * | **CIVIL ACTION NO. 10-1559** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Crystal Meaux, born March 9, 1981, filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 27, 2008, alleging disability as of May 22, 2008, due to back problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled. However, I recommend that this matter be remanded for further administrative action, based on the following:

**(1) Records from Dr. Roland Miller dated August 5-19, 2008**. Claimant complained of back and right leg pain after an on-the-job injury in May, 2008. (Tr. 161). X-rays showed early degenerative disc space narrowing at L5-S1. (Tr. 148-49). An MRI showed a central disc bulge at L4-L5 and L5-S1 that was quite marked at both levels. (Tr. 162). There was no significant neural foraminal narrowing or spinal stenosis.

**(2) Consultative Examination by Dr. Michael Palmer dated December 20, 2008**. Claimant complained of a back injury. (Tr. 192). She had had physical therapy with no help. (Tr. 182-88). She stated that her pain increased when she walked too long, and that her right leg locked up, causing her to fall many times. She was able to dress herself with help, feed herself, stand for 10 minutes in three hours cumulatively, walk on level ground 10 minutes, sit at one time for 15 minutes in two hours cumulatively, lift three pounds maximally, and drive for 15 to 20 minute intervals. (Tr. 193). She was able to sweep, cook, and do dishes, but unable to mop, vacuum, shop, climb stairs, and mow grass.

On examination, claimant was 63 ½ inches tall and weighed 182 pounds. (Tr. 194). She was able to get up and off the exam table and up and out of the chair without difficulty. On spine and extremities exam, she had 2+ pulses, normal gait, and 5/5 strength.

Straight leg raise was negative. She was unable to lay straight back on the table. She walked on her heels and toes with difficulty. She was able to squat one-third of the way down. Neurologically, she was normal. (Tr. 195).

Dr. Palmer found that claimant had some degree of disability, and that she should lift or carry only 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit four hours in an eight-hour day with normal breaks alternating between those positions, and limited stooping or crouching. He found that she had no manipulative or environmental limitations, but would be restricted from frequent use of stairs.

**(3) Physical Residual Functional Capacity ("RFC") Assessment dated January 20, 2009**. Dr. Charles Lee found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 199). She could stand/walk and sit about six hours in an eight-hour workday. She had unlimited push/pull ability. She could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; frequently balance, and never climb ladders/ropes/scaffolds. (Tr. 200).

**(4) Records from Tulane University Hospital Clinic dated January 29, 2009 to September 22, 2009**. On January 29, 2009, claimant complained of back pain with radiculopathy. (Tr. 223, 269). She had right L5-S1 facet joint medial

3

branch blocks on March 3, May 26, June 30, September 22, (Tr. 223, 228, 267, 354). The diagnosis was spondylosis.[1]

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on November 9, 2009, claimant was 28 years old. (Tr. 28). She stated that she was 5 feet three inches tall, and weighed 180 pounds. She had completed the 11th grade, then obtained her GED. (Tr. 31). She had three children, ages six, eight and 11. (Tr. 28).

Claimant had received a CNA certification. (Tr. 32). She had stopped working after she hurt herself at a nursing home. She had worked as a nursing assistant for three years. (Tr. 33). She had also been a waitress/manager at a seafood restaurant for about three years.

As to complaints, claimant testified that she was being treated at Tulane for her back. (Tr. 28). She stated that Dr. Tate was prescribing medication for her depression. (Tr. 29). She rated her back pain as nine on a scale of one to 10. (Tr. 30).

Claimant reported that she was taking Panlor SS, Zanaflex, Prozac, Ambien, and Nexium. (Tr. 29). She stated that her medications made her drowsy. (Tr. 30).

---

[1] Claimant also submitted records to the Appeals Council dated February 2, 2010 through April 10, 2010. (Tr. 729-830). These records do not relate to the relevant time period and will not be considered by this Court.

As to activities, claimant had a driver's license. (Tr. 28). She said that she did not cook very often, because she could not stand up for more than 30 minutes at a time. (Tr. 31). She stated that her children helped her with the laundry. She reported that she was up and down most of the day.

Regarding restrictions, claimant testified that she needed help putting on her pants or shorts. (Tr. 30). She said that she could walk from her bedroom to her living room before she became out of breath, had back pain and leg weakness. (Tr. 34). She testified that lifting a gallon of milk on one occasion cause her to fall and have leg pain. Additionally, claimant reported that she could sit for no longer than 30 minutes, then had to reposition herself. (Tr. 34-35).

**(6) Administrative Hearing Testimony of William M. Stampley, Jr., Vocational Expert ("VE")**. Mr. Stampley classified claimant's past work as a CNA as semi-skilled with an SVP of 4, a waitress as light and semi-skilled with an SVP-3, food service manager as light and skilled with an SVP-7, cashier-checker as light and semi-skilled with an SVP-3, garment folder as light and unskilled with an SVP-2, and restaurant hostess as light and skilled with an SVP-6. (Tr. 36). The ALJ asked the VE to assume a claimant of the same age, education, and work experience, who had the ability to lift 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand and walk for six hours out of eight, and sit for six

hours out of eight with normal work breaks. (Tr. 36-37). In response, Mr. Stampley identified the jobs of waitress, of which there were 15,815 positions statewide and 1,200,267 nationally; food services manager, of which there were 8,647 positions statewide and 763,588 nationally; cashier-checker, of which there were 18,202 statewide and 1,113,005 nationally; garment folder, of which there were 491 positions statewide and 18,158 nationally, and restaurant hostess, of which there were 2,759 positions statewide and 233,712 nationally. (Tr. 37).

When the ALJ modified the hypothetical to include the limitations of being able to lift only 10 pounds occasionally, stand or walk for only two hours out of eight, but able to sit for six hours out of an eight-hour day with normal breaks, Mr. Stampley responded that claimant could not perform her past relevant work. (Tr. 38). However, she could work as a final assembler, of which there were 621 sedentary positions statewide and 62,025 nationally, and telephone solicitor, of which there were 2,647 positions statewide and 321,707 nationally.

Claimant's attorney then asked whether there would be any jobs for a claimant who could pick up only 10 pounds occasionally, walk only for up to two hours, and sit only for up to an hour, to which the VE responded that there would not. (Tr. 39).

---

**(7) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the ALJ erred in finding that she did not have an impairment or combination of impairments that met or medically equaled the listings, had the RFC to perform a full range of light work, and was not disabled; (2) the ALJ applied an erroneous standard of law in failing to show good cause why her treating physicians' opinions were not given controlling weight, and in failing to seek clarification or additional evidence from her treating physicians regarding her RFC; (3) the ALJ improperly excluded certain evidence of her impairments in assessing her RFC, and failed to consider medical evidence of her depression; (4) the ALJ failed to properly consider or apply the VE's testimony, and (5) the Commissioner made a disability determination without a complete record of her medical history and/or conditions.  Because I find that the ALJ erred in assessing claimant's RFC, I recommend that this case be **REMANDED** for further proceedings.

As to the first argument, claimant asserts that the Commissioner erred in relying on the state agency medical examiner's opinion rather than her treating physicians' as to her RFC.  Additionally, she argues that the ALJ/Commissioner erred in failing to seek clarification or additional evidence from her treating physicians.

Claimant notes that the ALJ accepted Dr. Palmer's opinion that she could stand, walk, and sit for *four* hours in an eight-hour day with normal breaks. (Tr. 195). (emphasis added). However, in both of the hypotheticals to the vocational expert, the ALJ asked him to assume that claimant could sit for *six* hours out of an eight hour day. (emphasis added). (Tr. 37, 38). Mr. Stampley testified that the *minimum* sitting requirement under the Social Security Administration guidelines is *six* hours in an eight-hour day. (emphasis added). (Tr. 39).

Social Security Ruling 83-10 defines sedentary work as follows:

> **Sedentary work**. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and *sitting should generally total approximately 6 hours of an 8-hour workday*. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

(emphasis added).

Dr. Palmer found that claimant had some degree of disability, and that she should lift or carry only 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit *four hours* in an eight-hour day with normal breaks alternating positions, and limited stooping or crouching.  (emphasis added).  (Tr. 195).  In posing his hypotheticals to the vocational expert, the ALJ included a sitting limitation of six hours.  This finding is unsupported by the opinions of the examining physician.

Additionally, claimant argues that the ALJ erred in failing to obtain clarification from claimant's treating physicians, Dr. Miller and Dr. Tate, regarding their opinions of claimant's RFC or disability, citing 20 C.F.R. § 1512(e)(1).  In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the court held that if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).  (emphasis added).  *Id*. at 453.

Here, the only medical opinion as to claimant's RFC based on *personal* examination of  claimant is Dr. Palmer's, who opined that claimant was limited to sitting for four hours.  There is no other evidence from claimant's treating

9

physicians as to her RFC.  The only evidence to support the ALJ's finding is from the state agency examiner, whose opinion is entitled to lesser weight than that of an examining physician.  20 C.F.R. § 404.1527(d)(1).  Because Dr. Palmer's opinion was based on personal examination of claimant, it is entitled to controlling weight.

Finally, claimant argues that the ALJ and the Appeals Counsel erred in failing to consider additional medical evidence from Tulane Medical Center.  The Commissioner argues that this evidence is not relevant because it did not relate to the period before the date of the ALJ's decision in December 30, 2009.  However, a significant portion of these records were dated from January 29, 2009 to December 8, 2009, which is during the time period prior to the ALJ's decision. (Tr. 223-462).

When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding.  *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

By letter dated November 24, 2009, claimant asked the ALJ to leave the record open for two weeks in order to receive additional records from Tulane Medical Center. (Tr. 142). Claimant received no response. The ALJ's decision was issued on December 30, 2009. (Tr. 20).

Claimant did not receive the records from Tulane until after December 30, 2009. [rec. doc. 6, p. 6]. By letter dated March 29, 2010, the Appeals Council granted claimant's request to submit additional evidence. (Tr. 6). Claimant provided certified medical records to the Appeals Council on May 15, 2010. [rec. doc. 6, p. 6]. The Appeals Council denied claimant's request for review on August 5, 2010, indicating that it had considered the evidence dated May 12, 2010, which did not relate to the relevant time prior to the ALJ's decision on December 2, 2009. (Tr. 2).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

The Social Security Regulations provide that "[i]n deciding whether [claimant is] disabled, we will always consider the medical opinions in your case

record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527.  Here, the evidence submitted to the Appeals Council is relevant to the time period of issue.  While the Appeals Council indicated that it had reviewed the evidence dated May 12, 2010, it did not refer to the evidence dated prior to December 30, 2009.  (Tr. 2).  The records from Tulane dated prior to December 30, 2009, indicate that claimant continued to have symptoms for which she was seeking treatment.  This could affect the determination as to her residual functional capacity.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the sixth sentence of 42 U.S.C. § 405(g).  This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to reassess claimant's residual functional capacity based on the new and material evidence.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to

furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 28, 2012, Lafayette, Louisiana.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE